IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| THEODORE HARMON, )<br>#57859-060 )<br> )<br>      **Plaintiff,** )<br> )<br>  vs. )<br> )<br>J.S. WALTON, )<br>UNKNOWN PARTIES, )<br>WILLIAM MAYS, BRAD WEESEL, )<br>RUNGY, and JOHN DOE, )<br> )<br>      **Defendants.** ) | Case No. 15-cv-1351-MJR |

## **MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

Plaintiff Theodore Harmon, an inmate in the United States Penitentiary in Marion, Illinois ("Marion"), brings this *pro se* action for alleged violations of his constitutional rights by persons acting under the color of federal authority.[1] *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). This case is now before the Court for preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Harmon's claims stem from alleged incidents of his incoming mail being rejected by the mailroom on the premise that it contained depictions of nudity or other inappropriate content. Harmon also alleges that a number of prison officials violated his rights in denying his grievances regarding the screening of his incoming mail. In connection with his claims, Harmon names J.S. Walton (warden), Unknown parties (John/Jane Does 2-4, publication review committee members, and John/Jane Does 5-6, mailroom staff), William Mays

---

[1] It should be noted that Harmon checked the box on the first page of his complaint indicating that he also wished to bring his claims under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346. In order to bring a claim under the FTCA, a prisoner must demonstrate complete exhaustion of administrative remedies prior to instituting his suit. *See* 28 U.S.C. § 2675(a). It does not appear that Harmon has satisfied this exhaustion requirement at this juncture, accordingly, the Court will consider his complaint as presenting claims pursuant to *Bivens*.

(counselor), Brad Weesel (counselor), Rungy (correctional system specialist), and John Doe (administrative remedy coordinator). Harmon seeks monetary damages and injunctive relief.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*,

577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that Harmon's Complaint fails to state any claims upon which relief may be granted. It should be noted that the Court reviewed Harmon's First Amended Complaint for purposes of this screening order (Doc. 12).

## The Complaint

Harmon alleges that on or about April 23, 2015, the mailroom at Marion received a publication—Flat Chested Lydia; Fresh Face Model Chloe Knoxs—that was addressed to him (Doc. 12 at 10). John/Jane Does 5 and 6 allegedly examined the publication and flagged it for nudity or sexually explicit content (*Id.*). The publication review committee then reviewed and rejected the publication (*Id.*). The committee was led by defendant Rungy, and was comprised of John/Jane Does 2-4 (*Id.*). Warden J.S. Walton subsequently reviewed and rejected the publication on the same grounds (*Id.*). Harmon then received notice of the Warden's actions and commenced the grievance process (*Id.* at 11).

According to Harmon, the publication contained thumbnail sized images that did not depict nudity, but instead contained images of negligee clad models that could be ordered as larger prints (*Id.* at 10). Harmon alleges that the content depicted did not fall within the scope of materials exempted by the Ensign Amendment or other BOP procedures (*Id.*). Despite raising these concerns throughout the grievance process, Harmon secured no relief (*Id.* at 11-12). In addition to his grievances being rejected, Harmon contends that he was prevented from properly filing a Regional Appeal of his grievance because his counselor, Defendant Weesel, intentionally interfered with the proper format for filings, made himself unavailable during the timeframe that the grievance was due, and refused to grant an exception based on the correlation between his unavailability and Harmon's attempts to file a grievance (*Id.*). As a result of Weesel's actions,

John Doe (the facility remedy coordinator) rejected one of Harmon's grievances for a formatting deficiency (*Id.*).

Harmon ultimately alleges that he is unsure what legal theories might apply to his situation, but that he prays for any applicable relief. He also claims that the parties acted in a conspiracy to deny his rights, as contemplated by 42 U.S.C. § 1985 (*Id.* at 12).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment claim for rejection of Harmon's incoming mail in April 2015,
>
> **Count 2:** Fifth Amendment Due Process violation for preventing access to the prison grievance procedure; and,
>
> **Count 3:** Conspiracy claim against the defendants for acting together to deny Harmon's rights in violation of 42 U.S.C. § 1985.

### Count 1

The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail. *See generally Thornburgh v. Abbott*, 490 U.S. 401 (1989) (discussing the scope of a prisoner's First Amendment rights and collecting cases on the framework to be used to assess mail screening mechanisms); *Turner v. Safely*, 482 U.S. 78 (1987); *Pell v. Procunier*, 417 U.S. 817, 822 (1974) ("[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate

penological objectives of the corrections system"). The Seventh Circuit has held that "[t]he free-speech clause of the First Amendment applies to communications between an inmate and an outsider." *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (citing *Martin v. Brewer*, 830 F.2d 76, 76 (7th Cir. 1987)). To assert a cause of action for interference with or denial of one's mail under the First Amendment, a prisoner must "allege[] a continuing pattern or repeated occurrences of such conduct." *Id.* (citing *Sizemore v. Williford*, 829 F.2d 608, 609 (7th Cir. 1987)).

However, while prisoners generally have a constitutionally-protected interest in their incoming and outgoing mail, "[p]rison officials may…impose restrictions on prisoner correspondence if those restrictions are 'reasonably related to legitimate penological interests.'" *Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011) (quoting *Turner*, 482 U.S. at 89)). Crime deterrence, prisoner rehabilitation, and protecting the safety of prison guards and inmates are all legitimate penological interests. *Id.* In *Turner*, the Supreme Court held that prison regulations must be assessed under the following factors: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether the inmate has access to "alternative means" of exercising the restricted right; (3) the "impact [an] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and, (4) whether the regulation is an "exaggerated response to prison concerns." *Turner*, 482 U.S. at 89-91.

Of special concern, are content-based restrictions upon a prisoner's exercise of his First Amendment rights. *See Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999) (discussing the parameters of a prisoner's First Amendment rights to mail and noting that a non-content based claim of minor interference with mail typically does not state a claim grounded in the First

Amendment). As is the case with any right a prisoner holds, the right may be subject to certain limitations based on the prison's security needs, and whether there exists a "sufficiently important governmental interest to justify limitations on a prisoner's first amendment rights." *See id.* (citation omitted). The Ensign Amendment states, in relevant part:

> [N]o funds [available to the Attorney General for the Federal Prison System] may be used to distribute or make available to a prisoner any commercially published information or material that is *sexually explicit or features nudity*.

28 U.S.C. § 530C(b)(6) (emphasis added). Implementing regulations define "sexually explicit" as "a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation." 28 C.F.R. § 540.72(b)(4). "Nudity" refers to "pictorial depiction[s] where genitalia or female breasts are exposed." *Id.* § 540.72(b)(2). The term "features" means the publication depicts "nudity or sexually explicit conduct on a routine basis or promotes itself based upon such depictions in the case of individual one-time issues." *Id.* § 540.72(b)(3). However, nudity is not a "feature" where it illustrates "medical, educational, or anthropological content." *Id.*

The regulations also define the procedures prisons must take when they are prohibited from distributing material under the Ensign Amendment:

> When commercially published information or material may not be distributed by staff or made available to inmates due to statutory restrictions (for example, a prohibition on the use of appropriated funds to distribute or make available to inmates information or material which is sexually explicit or features nudity,) the Warden or designee shall return the information or material to the publisher or sender. The Warden or designee shall advise the publisher or sender than an independent review of the decision may be obtained by writing to the Regional Director within 20 days of receipt of the notification letter. Staff shall provide the inmate with written notice of the action.

*Id.* § 540.72(a).

Here, Harmon has failed to state a claim against any named defendant for violating his First Amendment rights because he has not identified a pattern of repeated occurrences. His

complaint alleges a single rejection in April 2015 of a catalogue containing thumbnail images. *See Zimmerman*, 226 F.3d at 572; *Sizemore,* 829 F.3d at 610-11. He asserts that the defendants deemed the images violative of prison policy because they contained nudity, though the images did not, by his account, depict nudity. Regardless of the contents of the images in question, Harmon's claim fails because he complains of a one-time issue. Accordingly, Count 1 will be dismissed with prejudice as to all named defendants.

## Count 2

In addition to alleging an infringement of his First Amendment rights, Harmon also alleges that his due process rights were violated by certain defendants obstructing his access to the grievance process. This claim fails for two reasons. First, prisoners do not have a free-standing interest in the existence of a grievance procedure, so any obstruction of his access to the grievance procedure does not state a claim. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (finding that a failure to comply with a prison procedure or regulation does not give rise to a claim where the failing official did not otherwise participate in the underlying conduct). However, a prisoner may have a due process claim if the allegations include the obstruction of a grievance about an underlying constitutional violation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-81 (7th Cir. 2015) (finding that prison officials who received detailed correspondence about an underlying constitutional violation may be personally liable for failing to act upon receipt of those grievances). This gives rise to the second reason that Harmon's claim fails—with the dismissal of Count 1, he has failed to identify an underlying constitutional violation. Accordingly, Count 2 is dismissed with prejudice as to all defendants.

## Count 3

Finally, as to his conspiracy claim, Harmon has failed to identify a sufficient factual basis

to allow this claim to proceed beyond screening. At minimum, to present a claim for a conspiracy, a plaintiff must "demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (citation omitted).

Here, Harmon's mention of a conspiracy is insufficient, even at the early pleadings stage, to satisfy basic pleading requirements under Federal Rule of Civil Procedure 8 or *Bell*, 550 U.S. at 570 (requiring a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face"). The factual allegations do not support a conspiracy claim against defendants based on their apparent screening of his incoming mail or rejection of his access to the grievance process. Harmon has not set forth with any particularity when the defendants met to hatch a conspiracy, what they agreed to do in furtherance of that conspiracy, or how the conspiracy was designed to harm him. Identifying a bare legal theory without any factual allegations is insufficient to state a claim for relief. *See Bell*, 550 U.S. at 570; *Brooks*, 578 F.3d at 581 (courts should not accept threadbare or conclusory legal elements as stating a claim). Thus, Count 3 is dismissed with prejudice as to all defendants.

### Pending Motions

Harmon's Motion for a temporary restraining order (TRO) or a preliminary injunction (Doc. 3) is hereby **DENIED**. Because the Court does not find that Harmon has stated a claim for an underlying harm, it would be inappropriate for the Court to grant any sort of injunctive relief.

Harmon's Motion for Class Certification (Doc. 4) is hereby **DENIED** as moot because

none of his claims are being allowed to proceed.

Likewise, Harmon's Motion for Appointment of Counsel (Doc. 10) and his Motion for Recruitment of Counsel (Doc. 13) are hereby **DENIED** as moot because none of his claims are proceeding.

### Disposition

**IT IS ORDERED** that **ALL COUNTS** are **DISMISSED** with prejudice against all named defendants for failure to state a claim upon which relief may be granted.

Because Harmon's Amended Complaint still fails to state a claim upon which relief may be granted, this Court will now assess a <u>strike</u> for the dismissal of the Amended Complaint, pursuant to § 1915A(b)(1). *See Paul v. Marberry*, 658 F.3d 702, 704 (7th Cir. 2011) (noting that a "dismissal is a dismissal, and provided that it is on one of the grounds specified in [§] 1915(g) it counts as a strike, . . ., whether or not it's with prejudice.").

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

### Notice

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal within 30 days from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A).

The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion must be filed within twenty-eight (28) days of the entry of judgment, and the deadline cannot be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or

good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:  September 22, 2016**

**s/ MICHAEL J. REAGAN**
**U.S. Chief District Judge**